**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MICHAEL WHEELER and CARRISSA WHEELER,** | |
| *Plaintiffs,* | Civil Action No. 12-7528 |
| v. | OPINION |
| **CITY OF JERSEY CITY, et al.** | |
| *Defendants.* | |

This matter comes before the Court by way of the summary judgment motions of Jersey City (or "the City"), the Jersey City Police Department,[1] Timothy O'Brien, Michael Meade, Mark Hennessy, Gilberto Vega, Thomas Porter, Richard Romanski and Brian Cullinane, Dkt. No. 46, and of Nathaniel Montanez, Dkt. No. 45. Plaintiff Michael Wheeler and Carrissa Wheeler's Amended Complaint includes six counts: (1) common law tort; (2) false imprisonment; (3) excessive force; (4) policy, practice, or custom by Jersey City of failing to investigate and failing to train its officers; (5) common law negligence in hiring, training, retention, and supervision of officers by Jersey City; and (6) loss of consortium by Mrs. Wheeler. Dkt. No. 11. The Court discusses these claims below.

**I. BACKGROUND**

This matter concerns the arrest of Plaintiff Michael Wheeler by several Jersey City police officers and the altercation that took place during that arrest. Plaintiff Michael Wheeler and his

---

[1] The Jersey City Police Department is not a separate entity from Jersey City, so the Court's discussion will only mention Jersey City.

1

wife, Carissa Wheeler, sue Defendants Jersey City, the Jersey City Police Department, Timothy O'Brien, Michael Meade, Mark Hennessy, Gilberto Vega, Thomas Porter, Richard Romanski, Brian Cullinane, and Nathaniel Montanez.

It began on March 4, 2011.[2] Sergeant Timothy O'Brien, Officers Michaele Meade, Mark Hennessey, and Brian Cullinane were all assigned to the Jersey City police department's street crime unit, which focuses on violent crimes in high crime areas. That day, the street crimes unit dispatched members to the area of Martin Luther King, Jr. Drive and Oak Street on the report that there was a large party occurring and individuals nearby had handguns. Officer Hennessy observed a man reach into his pocket and expose a handgun. Officer Hennessey told Officer Meade and then placed the man under arrest. Sergeant O'Brien then arrived at the scene; he had previously been informed that the other officers had taken a handgun from a man there. Several officers then sought to break up a party happening nearby at 453 Martin Luther King, Jr. Drive.

Michael Wheeler was working as security at that event. A police officer demanded that he leave. When Mr. Wheeler explained that he was security, the officer got very angry and asked him if he "wanted to go to the hospital or to jail." The officer then grabbed and began punching Mr. Wheeler in his face and upper body. Officer Hennessy then kneed Mr. Wheeler in the gut. Mr. Wheeler claims he did not resist. He was then dragged over to a car and repeatedly punched, kicked, and hit with a baton. Mr. Wheeler claims he did not fight back and only tried to protect his head with his hands. He then fell to the ground and was cuffed. An officer continued to strike him on the legs and head with a baton. Mr. Wheeler heard a loud sound like a gun shot and felt a

---

[2] All facts are drawn from the Affidavit of Michael Wheeler, Dkt. No. 49-3; Defendants' Statement of Undisputed Facts (to the extent Plaintiff does not dispute the facts), Dkt. Nos. 46-3, 49-2; and the video of the altercation, Wheeler Cert. Exhibit G, Dkt. No. 49-11. Any disputed fact for which Plaintiffs have cited countervailing evidence has been construed in Plaintiffs' favor.

sharp pain in his leg; he initially thought he had been shot.  One officer, which Mr. Wheeler identifies as Officer O'Brien, allegedly bent over Mr. Wheeler and said "If you don't die now, if I ever see you again, I'm going to kill you."  It also appears that sometime during this fight, fourteen-year-old James Wheeler got involved—the extent of that involvement is disputed.  While Plaintiff Michael Wheeler boxed as a teenager, at the time of the incident he was 5'8", 130 pounds, and had not boxed or exercised in years.

During the conflict, a crowd of about a hundred people partially surrounded the officers.  At least one object was thrown from the crowd.  A citywide assist call then went out, and Officer Gilberto Vega responded, together with Officers Thomas Porter and Esparre.  Officer Vega joined into the fight, striking Plaintiff Michael Wheeler on the knee with a baton.  A video of the scene depicts many more police cars appearing on the scene over several minutes.

Mr. Wheeler was then transported by ambulance to Jersey City Medical Center.  He had a fractured skull and head injury, was bleeding from his head, knee, ankle, and leg.  He drifted in and out of consciousness for five or six hours while at the hospital.  Mr. Wheeler still suffers from memory problems, blurred vision, headaches, dizziness, vertigo, and severe anxiety.

Plaintiffs also present the expert testimony of Christopher Chapman, Ph.D, a retired police sergeant from the Township of Cranford Police Department, to support their claims against the City.  See Cert. of Steve Chambers Ex. K, December 11, 2014 Expert Report of Christopher Chapman, Dkt. No. 11 (hereinafter "Chapman Report").  Only eight pages of the report discuss facts or conclusions pertaining to this incident.  Id. at 38-46.  Dr. Chapman concludes there is a custom of failing to investigate internal affairs complaints because "[t]here are no units of analysis within this case that suggest that the JCPD investigated the alleged excessive Use of Force used against Mr. Wheeler."  Id. at 40.  He also concludes that the City fails to train its officers in use of

force, relying solely on: (1) the testimony of Officer Vega showing that Officer Vega held incorrect beliefs concerning use of force and could not identify baton training other than that he received at the police academy; (2) the deposition testimony of Officer Hennessy that he was trained if an individual punches him, he is to punch them back; and (3) video evidence showing that what happened in this case did not comport with accepted police practices and procedures.  Id. at 41-42.

Plaintiffs Michael and Carissa Wheeler sue for (1) common law tort; (2) false imprisonment; (3) excessive force; (4) policy, practice, or custom by Jersey City of failing to investigate and failing to train its officers; (5) common law negligence in hiring, training, retention, and supervision of officers by Jersey City; and (6) loss of consortium by Mrs. Wheeler.  Defendants move for summary judgment on all claims.  Dkt. Nos. 45-46.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the non-moving party.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

## III. ANALYSIS

### A.  Claims Against Individual Officers

#### 1.  False Arrest (Count 2)

Defendants argue that the false arrest claim fails as a matter of law because Plaintiff pled guilty to one of the original criminal charges. This is correct. A false arrest claim cannot prevail where there was a valid basis for the arrest. See Edwards v. City of Philadelphia, 860 F.2d 568, 576 (3d Cir. 1988). Because Plaintiff Mr. Wheeler pled guilty to one of the original criminal charges, Obstruction of Administration of Law (N.J.S.A. 2C:29-1A), Defs.' Statement ¶ 64, Dkt. No. 46-3, there was a valid basis for the arrest. Summary judgment is therefore granted in favor of all Defendants on Count 2.

### 2. Excessive Force (Count 3)

Count 3 is a Section 1983 claim for excessive force. Defendants argue that the evidence establishes that there was no excessive force used here.

For Section 1983 claims, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This requires: (1) violation of a constitutional right and (2) that the right is clearly established. The Fourth Amendment prohibits the use of excessive force when arresting a suspect. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999). An officer may only use reasonable force when effectuating an arrest. Kopec v. Tate, 361 F.3d 772, 776-78 (3d Cir. 2004). To determine whether the force was reasonable, the court must apply the reasonableness test, which requires an analysis of the facts and circumstances of the incident. Graham v. Conner, 490 U.S. 386, 396 (1989). In short, the right to be free from excessive force during arrest is clearly established. The question here, then, is whether Plaintiffs have presented evidence sufficient for a reasonable juror to find that right was violated.

Four police officers—Michael Meade, Thomas Porter, Richard Romanski, and Brian Cullinane—testified that they did not come into physical contact with Mr. Wheeler during the incident.  Plaintiffs have not presented any evidence that these officers had any physical contact with Mr. Wheeler at all.[3]  There is therefore no genuine dispute of material fact as to whether these officers used excessive force.  Summary judgment on Count 3 is granted in favor of Michael Meade, Thomas Porter, Richard Romanski, and Brian Cullinane.

However, Officers Gilberto Vega, Mark Hennessey, Nathaniel Montanez, and Sergeant Timothy O'Brien each testified that they had physical contact with Mr. Wheeler during the arrest.  They argue that a surveillance video recording the arrest establishes beyond genuine dispute that no excessive force was used.  However, the tape pans away from Mr. Wheeler several times, the view of the officers' hands and Mr. Wheeler is frequently obstructed, and points throughout the video, including for example at 11:55, lend credence to Plaintiffs' claims of excessive force.  The surveillance video can be interpreted to show several punches and baton hits targeting a subdued Mr. Wheeler.  Because the videotape does not establish that excessive force was not used and Officers Gilberto Vega, Nathaniel Montanez, Mark Hennessey and Sergeant Timothy O'Brien admit to having physical contact, the claim against them may proceed.

### 3.  Common Law Tort Claim (Count 1)

The common law tort claim continues as to the officers who had physical contact with Mr. Wheeler.  The New Jersey Tort Claims Act § 59:3-3 states that "a public employee is not liable if

---

[3] In a supplemental affidavit, Michael Wheeler states that "I have been informed that in addition to Sergeant O'Brien and P.A. Hennessy, Police Officers, [sic] Vega, Meade, and Montanez took their turns beating me."  Wheeler Supp. Aff. ¶ 11.  He does not state this from his personal knowledge and does not identify who or what informed him that Officer Meade was involved in the alleged beating.  This statement is therefore not admissible evidence of misconduct, and so cannot support Plaintiffs' case at this stage.

he acts in good faith in the execution or enforcement of any law." This section provides immunity to officers so long as their actions are objectively reasonable and not taken in bad faith. New Jersey courts frequently apply the same analysis to the New Jersey Tort Claims Act as is applied in Section 1983 claims. See Lear v. Township of Piscataway, 236 N.J. Super. 550, 553 (App. Div. 1989); Hayes v. Mercer County, 217 N.J. Super. 614 (App. Div. 1987). For the same reasons above concerning Mr. Wheeler's excessive force claims, summary judgment on the common law tort claim is (1) granted in favor of Defendants Michael Meade, Thomas Porter, Brian Cullinane, and Richard Romanski and (2) denied for Officers Gilberto Vega, Nathaniel Montanez, Mark Hennessey, and Sergeant Timothy O'Brien.

### 4. Loss of Consortium (Count 6)

Plaintiff Mrs. Wheeler also brings a claim for loss of consortium. Defendant Montanez argues that such a loss of consortium claim is not actionable under Section 1983, which is correct. See Horvath v. Rimtec Corp., 102 F. Supp. 2d 219, 236 (D.N.J. 2000); Toscano v. Borough of Lavallette, No. 04-4412, 2006 WL 1867197, at *10 (D.N.J. June 30, 2006); Flaherty v. Enclave, 605 A.2d 301, 305 (N.J. Law Div. 1992); Catalane v. Gilian Inst. Group, 271 N.J. Super. 476, 499 (App. Div. 1994). However, Plaintiffs' common law tort claim remains in this case, and Defendant Montanez provides no argument, case law, or analysis as to why a loss of consortium claim cannot accompany a common law tort claim. This claim may therefore proceed against remaining Defendants Gilberto Vega, Nathaniel Montanez, Mark Hennessey and Timothy O'Brien.

### B. Claims Against Jersey City

Count 4 is a Monell claim against Jersey City for a policy, custom, or practice of failing to investigate internal affairs complaints and failing to adequately train its officers. The City argues

that Plaintiff has not presented evidence of a custom or policy of failing to investigate claims and failing to train officers in use of force. The Court agrees.

A city may be liable under Section 1983 for a policy or practice of violating constitutional rights. See Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). A "policy is made when a 'decision maker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when; though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

Liability also may extend under Section 1983 for failure to train. "To bring a claim of failure to train under § 1983, a Plaintiff must (1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference on the part of the municipality." Lapella v. City of Atl. City, No. 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012). A plaintiff may not establish a failure to train claim by: "(1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; and (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct." Simmons v. City of Phila., 947 F.2d 1042, 1060 (3d Cir. 1991). The failure to train must rise to the level of deliberate indifference, which requires a plaintiff to show that the need for more training was so obvious and so likely to lead to a constitutional violation that the failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

1. **Failing to Investigate Internal Affairs Complaints**

Plaintiffs present Dr. Chapman's report as evidence that the City had a custom or policy of failing to investigate internal affairs complaints. This report is a net opinion that does not meaningfully discuss facts necessary to underlie its conclusions.

Concerning this claim, Dr. Chapman's report suffers from two critical defects. First, he did not reference the City's internal affairs records or policies, so he cannot provide an opinion about the policies or customs of the City. Chapman Rep. at 40-42. He does not discuss what the existing policies provide, whether the policies themselves are deficient, or whether they are implemented deficiently. There is no analysis of how other complaints are not investigated or how some percentage of non-investigated complaints would effectively constitute a policy or custom of the City not to investigate. In fact, there is no mention <u>at all</u> of any internal affairs complaints other than the ones involving Mr. Wheeler. That alone disqualifies his testimony from supporting Plaintiffs' claim on this point. Second, he points to no testimony, documents, or other support for his claim that the City did not investigate the internal affairs complaints in this case. Indeed, that conclusion is contradicted by deposition testimony from Officer Montanez that an internal affairs investigation was conducted as a result of the underlying incident. Wheeler Cert. Ex. K, Montanez Dep. at 50:3-13, Dkt. No. 49-15. The Court cannot credit an expert's unsupported assertion. <u>See, e.g.</u>, <u>Curtis v. Besam Grp.</u>, No. 05-2807, 2008 WL 1732956, at *6 (D.N.J. Apr. 10, 2008) ("an expert's bare conclusions, unsupported by factual evidence, are inadmissible."). The claim that the City had a custom or policy of failing to investigate internal affair complaints therefore fails.

### 2. Failing to Train Officers in Use of Force

Dr. Chapman's report is similarly defective in supporting his claim that the City failed to train its officers suffers from similar defects. He points to no training materials, training records, internal affairs reports, or other complaints to support his conclusion that the City failed to train

9

its officers. Dr. Chapman admits that "to determine if Officer Vega and other JC police officers were properly certified during the time they used batons on Mr. Wheeler a review of their specific baton certification, written examinations and practical examination would needed [sic]." Chapman Rep. at 41. He did not review any of these documents. Id.

Dr. Chapman relies on testimony from Officer Vega and Officer Hennessy allegedly evincing incorrect beliefs about use of force. This evidence is facially insufficient. The Supreme Court has directly held that "factors peculiar to the officer involved in a particular incident" do not give rise to the pattern of tortious conduct showing a lack of adequate training. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407 (1997). Similarly, "a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident" do not give rise to a failure to train claim. Id. Any other outcome would turn every case of officer misconduct into a case against the city for failure to train. That is not the law.

Dr. Chapman claims that Jersey City failed to train officers in the use of the specific types of batons, Chapman Rep. at 46, but his only support for this conclusion is Officer Vega's failure at his deposition to identify baton training other than that received at the police academy. Id. at 41. Dr. Chapman admits he did not examine the City's training regime. Id. He also fails to explain how the training currently in place in Jersey City fails to measure up to training appropriately used in other police departments, such that a jury could evaluate how the training in Jersey City is defective. He therefore cannot reliably opine that the City's training regime was inadequate.

Plaintiffs also claim that Officer Montanez testified that the only guidelines provided to Jersey City officers on use of force concern handcuffing and taking down people, and that ongoing training only involves going to the "range twice a year." See Pls.' Opp. Summ. J., Statement of Facts ¶ 28. But the citations Plaintiff provides for this, Dkt. No. 49, Ex. K at 9:2-7, 11:11-17, are

utterly unrelated to the proposition for which they are used; they refer to calling in squad cars, who the officers' partners were, and how many police officers there were.

Finally, Plaintiffs argue that the City did not provide various documents when requested based on confidentiality (including internal affairs records), so Plaintiffs should not be required to present evidence supporting their Section 1983 claims. See Pls.' Opp. at 19; Chapman Rep. at 41. But Plaintiffs did not appeal Defendants' objection concerning confidentiality or Defendants' alleged failure to produce documents. Plaintiffs' failure to secure evidence does not shift the burden on summary judgment. Dr. Chapman's factually unsupported statements and the specific actions of particular officers in this case do not support Plaintiffs' failure to train claim. Summary judgment is granted in favor of Jersey City on Count 4.

### 3. Negligence in Hiring (Count 5)

Plaintiffs have presented no law indicating that a common law tort claim against the City for negligent hiring, training, or supervision may proceed solely on evidence that the officers held erroneous beliefs and took illegal actions in the instant case. Therefore, for the Court dismisses Plaintiffs' common law negligence claims in Count 5. See Godley v. Newark Police Dep't, No. 05-806, 2007 WL 269815, at *10 (D.N.J. Jan. 26, 2007) (dismissing common law negligent hiring, training, and supervision claims where Section 1983 claims of failure to train and supervise also failed).

## IV. CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order accompanies this opinion.

Date: March 14, 2016  /s Madeline Cox Arleo
  **MADELINE COX ARLEO**
  **UNITED STATES DISTRICT JUDGE**